**NO. 17-5043**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

STANDING ROCK SIOUX TRIBE,
Plaintiff-Appellant,

And

CHEYENNE RIVER SIOUX TRIBE,
Intervenor-Plaintiff-Appellant,

v.

U.S. ARMY CORPS OF ENGINEERS,
Defendant-Appellee,

And

DAKOTA ACCESS LLC,
Intervenor-Defendant-Appellee.

---

# EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

---

Nicole E. Ducheneaux
Fredericks Peebles & Morgan LLP
3610 North 163rd Plaza
Omaha, NE 68116
Telephone: (402) 333-4053
Facsimile: (402) 333-4761
nducheneaux@ndnlaw.com

Conly J. Schulte
Fredericks Peebles & Morgan LLP
1900 Plaza Drive
Louisville, CO 80027
Telephone: (303) 673-9600
Facsimile: (303) 673-9839
cschulte@ndnlaw.com

*Attorneys for Intervenor-Plaintiff-Appellant Cheyenne River Sioux Tribe*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

RELIEF REQUESTED ........ 3

STANDARD OF REVIEW ........ 4

ARGUMENT ........ 5

I. THE LACHES DOCTRINE DOES NOT APPLY TO THESE FACTS AND CIRCUMSTANCES ........ 5

II. CHEYENNE RIVER SIOUX TRIBE IS LIKELY TO SUCCEED ON THE MERITS OF ITS RFRA CLAIM ........ 14

A. The Corps' Easement And Flow Of Oil Implicates Religious Exercise ........ 14

B. Cheyenne River Sioux Holds Sincerely-Held Religious Beliefs ........ 15

C. The Corps' Easement And Resulting Oil Flow Substantially Burdens The Tribe's Religious Exercise ........ 15

III. THE TRIBE WILL BE IRREPARABLY HARMED IN THE ABSENCE OF AN INJUNCTION PENDING APPEAL ........ 17

IV. THE BALANCE OF HARMS FAVORS AN INJUNCTION ........ 18

V. THE PUBLIC INTEREST FAVORS AN INJUNCTION ........ 20

CONCLUSION ........ 21

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a) ........ 23

CERTIFICATE OF SERVICE ........ 24

# TABLE OF AUTHORITIES

## Cases

*Apache Survival Coal. v. United States*, 21 F.3d 895 (9th Cir.1994)......................12

*Appalachian Voices v. Chu*, 725 F. Supp. 2d 101 (D. D.C. 2010) ..........................13

**Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) ................. 15, 16, 20

*Cappaert v. United States*, 426 U.S. 128 (1976) ....................................................17

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)..............................................................................................18

**Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007) ................................................................... 7, 8, 9, 10, 11

*Elrod v. Burns*, 427 U.S. 347 (1976) .....................................................................18

*Employment Division v. Smith*, 494 U.S. 872 (1990) .............................................16

*Hobby Lobby v. Sebelius*, 134 S. Ct. 2751 (10th Cir. 2013)....................... 15, 16, 20

**Holt v. Hobbs*, 135 S. Ct. 853 (2015) ............................................................ 15, 16

**Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439 (1988) .......................................................................... 5, 16, 17

*Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280 (D. S.C. 2012)...............................................................................................11

**Menominee Indian Tribe of Wisc. v. United States*, 614 F.3d 519 (D.C. Cir. 2010)..............................................................................................12

*Mills v. Dist. of Columbia*, 517 F.3d 1304 (D.C. Cir. 2009) ..................................18

*New Era Publications Intern., ApS v. Henry Holt and Co., Inc.*, 873 F.3d 576 (2d Cir. 1989) ............................................................... 8, 9, 10

*Perry v. Judd*, 840 F. Supp. 2d 945 (E.D. Va. 2012)............................................12

**Petrella v. MGM, Inc.*, 134 S. Ct. 1962 (2014) ............................................ passim

*Rigdon v. Perry*, 962 F. Supp. 150 (D. D.C. 1997) ...............................................18

*Sherbert v. Verner*, 374 U.S. 398 (1963) ........................................................ 15, 16

*Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, No. 16-5259 (D.C. Cir. Oct. 5, 2016) ...........................................................10

*Tyndale House Publishers, Inc. v. Sebelius*, 904 F. Supp. 2d 106 (D. D.C. 2012) ..........................................................................................20

*Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958) ....................................................................... 4, 19, 20

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977) ...............................................................4

*Winters v. United States*, 207 U.S. 564 (1908) ...................................................17

*Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669 (D.C. Cir. 1985) .....................................19

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ....................................................... 15, 16

**Statutes**

28 U.S.C. § 1568 ........................................................................................5

28 U.S.C § 1658 ........................................................................................11

*42 U.S.C. § 2000bb-1 ....................................................................... 2, 14, 17

42 U.S.C. §§ 2000cc ....................................................................................2

**Rules**

D.C. Cir. R. 8 ..........................................................................................1, 3

Fed. R. App. P. 8 ......................................................................................1, 2

**Other Authorities**

82 Fed. Reg. 11021 (Jan. 18, 2017) ........................................................................10

## INTRODUCTION

Pursuant to Fed. R. App. P. 8(a)(2)(A)(ii) and D.C. Cir. R. 8, Plaintiff-Intervenor Cheyenne River Sioux Tribe ("Tribe") seeks an emergency injunction pending appeal of the District Court's order denying the Tribe's motion for a preliminary injunction.[1] The Tribe asks this Court to issue limited relief: an injunction pending appeal preventing the flow of oil through the Dakota Access Pipeline (”DAPL”) under Lake Oahe, a reservoir of the Missouri River that comprises the sacred waters of the Lakota people of the Cheyenne River Sioux Tribe. The Tribe and its members sincerely believe that the mere presence of oil in the pipeline, separate and apart from any leak in the pipeline, under their sacred waters will render those waters ritually impure and, therefore, unsuitable for use in their religious sacraments. Dakota Access, LLC ("Dakota Access") is engaged in

[1] The Tribe seeks this injunction on an emergency basis as, set forth further herein, the irreparable harm the Tribe faces is imminent. The District Court has denied both the Tribe's Motion For Preliminary Injunction and Motion For Injunction Pending Appeal seeking to prevent Dakota Access, LLC from flowing oil through the Dakota Access Pipeline. Attachments 11 & 14. Pursuant to Fed. R. Civ. P. 62(c), the Tribe filed a Motion for Injunction Pending Appeal, which was denied on March 14, 2017. Pursuant to Fed. R. App. P. 8(a)(2)(A)(ii), this is the first day the Tribe could seek relief from this Court. The Tribe's religious adherents sincerely believe that the flow of this oil will substantially burden their free exercise of religion. Attachment 6, Vance Decl. Dakota Access has informed the District Court that oil might be flowing through the pipeline as early as March 20, 2017. Attachment 13, p. 1. This present motion must be determined before that date in order to avoid irreparable harm to the religious adherents' free exercise of religion.

ongoing construction of the pipeline under Lake Oahe and has advised that oil will begin flowing between March 20, 2017 and March 22, 2017. Attachment 13, p. 1. An injunction is therefore necessary to prevent a substantial burden on Tribal religious exercise in violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 ("RFRA"). Consequently, the Tribe respectfully requests an injunction by March 20, 2017 to prevent violation of the Tribe's and its members' vital religious rights while this Court considers the merits of this matter.[2]

This motion meets this Circuit's standards for an injunction pending appeal. The Tribe sought a preliminary injunction because defendant U.S. Army Corps of Engineers ("Corps") granted an easement for the pipeline and the flow of oil in that pipeline violates the Tribe's rights under RFRA. Lakota religious practices require the waters of Lake Oahe to be ritually pure for important religious ceremonies. The flow of oil under Lake Oahe will render the ritually impure. This desecration of the Tribe's sacred waters at Lake Oahe substantially burdens the Tribe's religious exercise. This appeal raises important legal questions surrounding the expansive protections, which the Supreme Court has recently affirmed that Congress provided when it enacted RFRA and subsequently amended it by enactment of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc. This

[2] As required by Fed. R. App. P. 8(a)(1)(c), the Tribe moved for an injunction pending appeal in the District Court on March 10, 2017. The District Court denied the motion.

lawsuit also concerns the Tribe's and its members' fundamental rights to religious exercise. Without an injunction pending appeal, these rights will be infringed and the Tribe and its members will be irreparably harmed.[3]

## RELIEF REQUESTED

The Tribe seeks limited relief: an injunction directing Defendant Dakota Access to cease actions permitted by the Corps' easement that would cause oil to flow through the DAPL under Lake Oahe. The Lakota people believe that the mere existence of a crude oil pipeline under the waters of Lake Oahe will desecrate those waters and render them unsuitable for use in their religious sacraments. Attachment 6, Vance Decl. ¶ 18. The Lakota people believe that the pipeline correlates with a terrible Black Snake prophesied to come into the Lakota homeland and cause destruction. *Id.*, ¶ 18. The Lakota believe that the very existence of the Black Snake under Lake Oahe will unbalance the water, make it ritually impure, and render it impossible for the Lakota to use in their religious sacraments, especially the Inipi ceremony—a ritual of healing and purification that some believe is the most important sacrament in the Lakota religion. *Id.* Without access to ritually pure water, the Lakota people cannot practice their religion. As Lake Oahe is the only

[3] Undersigned counsel has conferred with counsel for other parties. D.C. Cir. R. 8(a)(2)(C). The Corps opposes the motion. Dakota Access opposes the motion and further advised that it opposes any form of interim stay and can file its opposition brief as early as tomorrow (March 16) if the Court expedites briefing.

ritually pure water available to the Tribe, desecration of these waters represents a substantial burden on the Tribe's religious exercise.

There is no dispute that it is the Tribe's sincere belief that the pipeline will violate the ritual purity of their sacred waters and render them unsuitable for use in religious sacraments. Instead, the District Court has erroneously concluded that this does not amount to a substantial burden on the Tribe's religious exercise. In light of this, the Tribe asks the Court to protect its important and undisputed sincerely held beliefs while it considers this question.

## STANDARD OF REVIEW

The Court reviews a motion for injunction pending appeal pursuant to four factors. The Court looks to whether the moving party has sufficiently shown (1) that it is likely to prevail on the merits of its appeal; (2) that it will be irreparably harmed absent an injunction; (3) that other parties will not be substantially harmed; and (4) that the public interest favors an injunction. *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). A moving party need not show a "mathematical probability" of success on the merits, and relief may be granted as long the movant has made a "substantial case" on the merits. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

## ARGUMENT

The Tribe seeks an injunction pending appeal to protect the Tribe and its members' religious exercise under RFRA. Dakota Access continues construction on the pipeline passing under Lake Oahe, and the oil company has informed the District Court below that oil will begin flowing as early as March 20, 2017. Attachment 13, p. 1.

This appeal raises two important issues. First, the laches doctrine does not apply here. Second, a substantial question exists concerning whether *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439 (1988) applies to this case. These issues will be fully briefed in this appeal, however, pending a decision, an injunction is imperative to protect Tribal religious exercise.

### I. THE LACHES DOCTRINE DOES NOT APPLY TO THESE FACTS AND CIRCUMSTANCES

The Tribe has presented a substantial case that the doctrine of laches does not bar the injunctive relief sought. As an initial matter, the Tribe brought its RFRA claim and accompanying Motion for Preliminary Injunction squarely within RFRA's statute of limitations. *See* 28 U.S.C. § 1568. Consequently, absent "***extraordinary circumstances,***" which do not exist here, laches cannot bar the relief requested. *See Petrella v. MGM, Inc.*, 134 S. Ct. 1962, 1977 (2014). Dakota Access formally requested a permanent easement at Lake Oahe in October 2014 and submitted an application for such an easement to the Corps in June 2015. Attachment 11, p. 3.

Although the parties disagree concerning the Corps' efforts to consult with the Tribe regarding its authorization of the subject pipeline,[4] it is undisputed that the Tribe "submitted comments in person and via email, phone, and letter" prior to issuance of any permit to the oil company to build its pipeline "which alerted the Corps in general terms that DAPL might affect sacred sites, including water." Attachment 11, p. 9. On July 25, 2017, the Corps issued initial authorizations for the pipeline, including an Environmental Assessment and Finding of No Significant Impact, but not the subject easement.

The present litigation commenced on July 27, 2017, the Tribe joined as a plaintiff on August 10, 2017, and shortly thereafter on September 9, 2017, the Corps announced that it would not grant the final easement that Dakota Access required to drill under Lake Oahe, and instead would review both the legal basis for the easement in light of Tribal concerns and its prior decisions related to the pipeline. Attachment 11, pp. 3-4. The litigation proceeded at the same time that the Corps conducted this additional review. It is undisputed that the Tribe continued to raise concerns regarding the religious sanctity of its waters during the litigation. Attachment 11, p. 11-12. On November 14, 2016, the Corps invited the Standing Rock Sioux Tribe to engage in further discussions on the easement. *Id.*, p. 4. And

---

[4] Questions concerning the adequacy of the Corps' consultation with the Tribe are currently the subject of a Motion for Partial Summary Judgment currently being briefed in the district court.

on December 4, 2016, the Corps announced that it would not grant the easement to cross Lake Oahe without further review, including possibly a full Environmental Impact Statement ("EIS"). *Id.*, pp. 4-5. On January 18, 2017, the Corps published in the Federal Register a notice of intent to prepare an EIS, including a deadline for submission of scoping comments of February 20, 2017. However, on February 8, 2017, the Corps granted the easement consistent with an Executive Memorandum issued by President Trump on January 24, 2017, and Dakota Access began drilling under Lake Oahe immediately. Attachment 11, p. 5; Attachment 6, p. 1.

In the decision below, the District Court erroneously relied on the Supreme Court's decision in *Petrella v. MGM, Inc.* to hold that these facts precluded the Tribe from seeking injunctive relief under the doctrine of laches. In *Petralla*, however, the Court held "in the face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief. . . ." *Id.* at 1973. The Court then established a narrow exception to this principle. "***In extraordinary circumstances, however,*** the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the ***relief equitably awardable***." *Id.* at 1977 (emphasis added). The Court referenced the Sixth Circuit's decision in *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007) to illustrate where this principle may be avoided.

In *Chirco*, laches barred plaintiffs' suit, filed within the applicable statute of limitations, alleging that defendant had used plaintiffs' architectural designs without their permission in building a housing development. *Petrella*, 134 S. Ct. at 1978 (discussing *Chirco*). *Chirco* presented circumstances the Supreme Court deemed extraordinary because plaintiffs "long [had been] aware of defendants' project" and yet had taken "no steps to halt the housing development until more than 168 units were built, 109 of which were occupied." *Id.* Granting plaintiffs equitable relief would have mandated the destruction of the entire housing development. *Id.* As plaintiffs had "failed to take readily available measures to stop the project" before defendants broke ground and wholesale destruction of the project would have resulted in "unjust hardship" upon defendants and innocent third parties, relief was determined to be inequitable. *Id.* (quoting *Chirco*, 474 F.3d at 236).

The Supreme Court held that such ***extraordinary circumstances*** did not exist in *Petrella*, and they do not exist here. In *Petrella*, plaintiffs "notified [defendant] of her . . . claims *before* [defendants] invested millions of dollars in [the project]." *Id.* And the equitable relief requested in *Petrella*—disgorgement and injunction against future infringement—"would not result in 'total destruction' of the [project] or anything close to it"; rather it would implicate only a fraction of defendants' income. *Id.* (quoting *New Era Publ'ns Intern., ApS v. Henry Holt & Co., Inc.*, 873 F.3d 576, 584 (2d Cir. 1989)).

In the present case, the District Court acknowledged the Tribe raised religious concerns related to the water repeatedly during the administrative process and this litigation. *See* Attachment 10, p. 3. The law did not require the Tribe to incant any magic words to give notice of its claim. Attachment 12, p. 2 (citing *Whorton v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 334, 348 (D. D.C. 2013)). Unlike plaintiffs in *Chirco* or *New Era Publ'ns*, upon which *Petrella* also relied, the Tribe did not sit on its hands and do nothing while the defendants innocently proceeded in their endeavors unaware of any objection or unaware a lawsuit might be forthcoming. *See Chirco*, 474 F.3d at 230, 234-35; *New Era Publications*, 873 F.3d at 584. Instead, the Tribe objected to the pipeline project throughout the process, alleging religious concerns, environmental concerns, and treaty and trust responsibility concerns; the Tribe brought its claim for injunctive relief as soon as that claim was ripe.

Further, as in *Petrella*, the Tribe's requested relief implicates a small fraction of the total project. The Tribe objects to the siting of this pipeline only to the extent that it crosses Lake Oahe—a span of no more than 6500 feet. Attachment 7, p. 13. This is an 1100-mile long pipeline reaching from North Dakota to Illinois, nearly all of which Dakota Access completed at its own risk without having received the federal approvals that are at issue in the present litigation and knowing that the Tribe

and others had numerous objections to the Lake Oahe crossing.[5] About half of that pipeline was complete and 76% cleared and graded in August 2016, only a month after receiving initial federal approvals to cross Lake Oahe. Attachment 9, p. 24. All but the last 6500 feet was complete on February 7, 2017, before Dakota Access had even received the easement granting final permission to drill under Lake Oahe. *Id.* Dakota Access's claim that it would suffer the same kind of prejudice experienced by the plaintiffs in *Chirco* and *New Era Publications* is simply false. Lake Oahe is a discrete area and one that the Corps and Dakota Access have already demonstrated they could avoid by selection of a different route. Attachment 1, pp. 6-9. Indeed, beginning on December 4, 2016 and through the final granting of the easement on February 8, 2017, the Corps itself was explicitly considering "alternative locations for the pipeline crossing of the Missouri River." Attachment 5, ¶ 13; 82 Fed. Reg. 11021 (Jan. 18, 2017).

---

[5] This is a fact that the Corps and the D.C. Circuit have both acknowledged in this litigation. On November 18, 2016, citing Dakota Access's May 5, 2016 Request for Permission to Begin Construction Outside of PCN Areas, the Corps noted that "Dakota Access has acknowledged that it began construction prior to receiving all necessary approvals form the Corps 'at its own risk.'" Attachment 4 (quoting Attachment 3, p. 1). Likewise, Justice Griffith of the D.C. Circuit Court of Appeals reminded Dakota Access that its decision to proceed was a gamble: "So, it's a gamble . . . . [Y]ou're gambling that you're going to win." Transcript of Record at p. 65, *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, No. 16-5259 (D.C. Cir. Oct. 5, 2016).

No extraordinary circumstances exist here. The Corps had notice of the Tribe's objections and religious concerns. And the Tribe's request to avoid Lake Oahe not only implicates a minor portion of the existing pipeline, but it is relief that even the Corps supported a short six weeks ago. The Tribe has brought its RFRA claim and its request for injunctive relief well within RFRA's statute of limitations. *See* 28 U.S.C § 1658. Laches does not bar the Tribe's RFRA claim. The District Court erred by failing to engage in the analysis set forth in *Petrella* arising from *Chirco*, and instead applied a typical laches analysis, which itself was erroneous as discussed below.

The facts and circumstances of this case do not meet the standards for a laches defense. *See Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 293 (D. S.C. 2012) (finding that the laches doctrine is "highly fact-specific, so each case must be judged on its own merits") (citations omitted). A substantial question exists concerning the sustainability of the District Court's finding that the religious concerns voiced by the Tribe in the Section 106 National Historic Preservation Act ("NHPA") process were not specific enough to alert the government that the presence of the pipeline would impact the Tribe's religious exercise rights under RFRA. Other circuits have adopted additional considerations for the court in administrative cases: "'(1) whether the party attempted to communicate its position to the agency before filing suit, [and] (2) the nature of the agency response.'"

*Apache Survival Coal. v. United States*, 21 F.3d 895 (9th Cir.1994) (citations omitted). Regardless, "the law does not hold [a plaintiff] to the use of magic words" in order to give notice of a claim. *Whorton*, 924 F. Supp. 2d at 348. Holding the Tribe to such an unfair standard is particularly inappropriate in applying the equitable doctrine of laches.

There is also a substantial question regarding whether it was appropriate for the District Court to equate the laches notice standard with the notice requirements applicable to a challenge under the Administrative Procedures Act ("APA") or NHPA process. The District Court relied on *Menominee Indian Tribe of Wisconsin v. United States* to find that the Tribe failed to address claims during the administrative process. 614 F.3d 519 (D.C. Cir. 2010); Attachment 11, pp. 8-10. In *Menominee*, the court found that mere delay is not the standard, but instead unreasonable delay for failing to file suit. *Menominee*, 614 F.3d at 531; *see also Perry v. Judd*, 840 F. Supp. 2d 945 (E.D. Va. 2012) (finding delay where a party failed to file a suit that was ripe to file). The Tribe's RFRA claims are not tied to the APA or consultation process, rather they are independent statutory claims, which were unable to be raised in a court action until the Corps issued a decision that made the matter ripe for legal evaluation. *See Menominee*, 614 F.3d at 531 (overturning the district court decision for failing to properly calculate delay of time tied to failure to *file suit*). The earliest that the Tribe could have raised its RFRA claim was after

the Corps issued its July 25, 2017 permits. And the threat to the Tribe's religious exercise was not imminently threatened—and thus not ripe for injunctive relief—until the Corps abruptly reversed course and approved the easement on February 8, 2017. *See Appalachian Voices v. Chu*, 725 F. Supp. 2d 101, 105 (D. D.C. 2010) (denying injunctive relief "[b]ecause the plaintiffs' asserted injury is not imminent"). Thus, even if the Tribe had raised the RFRA claim in its initial complaint in August of 2016, the District Court would not have entertained a motion for injunctive relief prior to the grant of the easement as until then, the government was actively engaged in representing to the Tribe and the public that it was undertaking further review, including ultimately an EIS, hence no imminent threat to the Tribe's RFRA-based rights existed.[6] The Tribe raises significant legal questions regarding the misapplication of the laches doctrine, which merit an injunction pending appeal for reviewable error.

[6] Indeed, at the February 6, 2017 status conference, Judge Boasberg advised the parties, "But in seeking a preliminary injunction, if they do, it sounds like we have at least 60 days for me to make a determination before any oil would flow and before any harm could potentially accrue to the plaintiffs." Attachment 15, pp. 17-16.

## II. CHEYENNE RIVER SIOUX TRIBE IS LIKELY TO SUCCEED ON THE MERITS OF ITS RFRA CLAIM

RFRA provides that the "Government shall not substantially burden a person's exercise of religion" unless the Government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). The Tribe has met its initial burden of showing (1) the Government's policy or action implicates religious exercise, (2) the relevant religious exercise is grounded in a sincerely held religious belief, and (3) the policy or action substantially burdens that exercise. Attachment 11, p. 16 (finding these initial three prongs must be met to sustain a RFRA claim).

### A. The Corps' Easement And Flow Of Oil Implicates Religious Exercise

No party disputed and the District Court held that issuance of the easement to place the DAPL and the ultimate flow of oil under the sacred waters of Lake Oahe implicates the Tribe's religious exercise in the performance of fundamental water-based religious ceremonies, including the Hanbleceya (vision-questing), Wiwanyan Wacipi (birth and renewal), Isnati Awiciliwanpi (coming of age for young women), Wiping of the Tears (conclusion of mourning), and Inipi (prayer and purification) ceremonies. Attachment 6, Vance Decl., ¶ 11a.

### B. Cheyenne River Sioux Holds Sincerely-Held Religious Beliefs

The District Court held that "the Tribe is likely to successfully establish a sincerely held belief that the presence of oil in the Dakota Access pipeline . . . interferes with its members' religious ceremonies." Attachment 11, p. 21. Therefore, Cheyenne River Sioux Tribe has met this burden.

### C. The Corps' Easement And Resulting Oil Flow Substantially Burdens The Tribe's Religious Exercise

The Corps' actions resulting in the flow of oil under Lake Oahe amounts to a substantial burden on the Tribe's religious practices. The Supreme Court has very simply held, consistent with the expansive protections provided by RFRA, that a substantial burden exists when the government requires a plaintiff to "engage in conduct that seriously violates their religious beliefs." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014); *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). Despite this clear, simple rule, the District Court improperly held that substantial burden could only exist under the pre-RFRA analysis of substantial burden deriving from Free Exercise cases, *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), which requires that a substantial burden cannot exist unless a party has been coerced into acting contrary to their religion or is forced to forego a government benefit. Attachment 11, pp. 19-25. As the Tribe discussed in its prior briefing, since the enactment of RFRA, courts properly applying the expansive protections therein have found substantial burden to exist in numerous

situations outside the *Sherbert/Yoder* Free Exercise context. Attachment 10, pp. 11-13.

The broader formulation of substantial burden is proper because, as the Supreme Court in *Hobby Lobby* explained that both RFRA and a subsequent amendment in RLUIPA clearly signal that RFRA was not meant to be tied to pre-RFRA Free Exercise authorities to the extent that those authorities are not consistent with the expansive protections provided by RFRA. *Hobby Lobby*, 134 S. Ct. at 2772 (addressing *Emp't Div. v. Smith*, 494 U.S. 872 (1990)). The court in *Holt*, 135 S. Ct. at 862 extended this principle explicitly to the substantial burden analysis. The District Court erroneously concluded, however, that *Holt's* ruling on substantial burden was restricted only to the facts in that case. Attachment 11, pp. 32-33. *Holt* does not support such a fact specific determination. *See Holt*, 135 S. Ct. at 862.

For the same reason, the District Court's reliance upon *Lyng* to find that the Corps' action does not impose a substantial burden on the Cheyenne River Sioux Tribe's members' free exercise of religion is in error. 485 U.S. 439 (1988); Attachment 11, pp. 22-27. As discussed by the Tribe in its prior briefing, the Court's weighing of Indian interests against government interests in *Lyng* (a pre-RFRA Free Exercise case) and its progeny constitutes a reasonability assessment that has been overruled by *Hobby Lobby*, 134 S. Ct. at 2777-78 and *Holt*, 135 S. Ct. at 862. Moreover, unlike the Indians in *Lyng*, the Tribe here has an ownership interest in the

waters of Lake Oahe under the *Winters* doctrine,[7] and hence *Lyng's* concerns regarding awarding the Indians a *de facto* beneficial ownership over federal land cannot hinder the Tribe's claim, as here the Tribe has an actual ownership interest at stake. Attachment 10, pp. 19-22.

RFRA provides even broader protection for religious exercise than even the Constitution, and any government action, such as the Corps' easement, that curtails religious practice must be reviewed with the utmost scrutiny. The Tribe raises significant legal questions regarding the governing substantial burden analysis and the applicability of *Lyng* to this case, which merit an injunction pending this Court's review of these issues.

## III. THE TRIBE WILL BE IRREPARABLY HARMED IN THE ABSENCE OF AN INJUNCTION PENDING APPEAL

The Tribe and its members will be irreparably harmed absent an injunction pending appeal to stop the flow of oil under Lake Oahe. The flow of oil under the sacred waters of Lake Oahe will render those waters unsuitable for use in the Tribe's sacraments, and this injury to the Tribe and its members violates their rights under RFRA, which are constitutional in nature. 42 U.S.C. § 2000bb-1. In this Circuit, it is clear that "the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. Dist. of Columbia*, 517 F.3d

---

[7] *See Winters v. United States*, 207 U.S. 564 (1908); *Cappaert v. United States*, 426 U.S. 128, 141 (1976).

1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 372 (1976)) (emphasis added); *see also Rigdon v. Perry*, 962 F. Supp. 150 (D. D.C. 1997) (violation of First Amendment religious expression rights constituted irreparable injury); *cf. Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) ("[W]here a movant alleges a violation of the Establishment Clause, this is sufficient, without more, to satisfy the irreparable harm prong for purposes of the preliminary injunction determination.").

The flow of oil in the DAPL under Lake Oahe will desecrate the Tribe's sacred waters[8]. Standing alone, this constitutes plain irreparable harm. The oil company has confirmed that oil will flow as soon as Monday, March 20, 2017. The irreparable harm to the Tribe's religious exercise, as a function of a sincere religious belief that no party disputes and that the court below has ruled will likely be established on the merits, will occur next week without intervention by this Court.

## IV. THE BALANCE OF HARMS FAVORS AN INJUNCTION

The balance of harms favors granting an injunction pending appeal in favor of the Tribe. The balance of harms analysis addresses whether, despite showings of probable success and irreparable injury, the issuance of a stay would have a serious

[8] The Tribe has no other source of ritually pure water. As the Corps itself described in a 2005 study, the Tribe is 100% reliant upon the waters of Lake Oahe as all other source of water on the reservation are either contaminated or inaccessible. *See generally*, Attachment 6, Ducheneaux Decl.

adverse effect on other interested persons so as to counteract the equitable judgment of an injunction. *See Va. Petroleum Jobbers Ass'n*, 259 F.2d at 925 (D.C. Cir. 1958).

The Corps will face no harm as a result of injunction pending appeal. In fact, between September 9, 2017 and January 24, 2017, the Corps supported suspension of the easement and even committed to engaging in a full EIS. Attachment 5. Significantly, the Corps would still be conducting the EIS today but for President Trump's intervention on January 24, 2017, which forced the Corps to terminate the EIS process and derailed the course of this litigation.

Dakota Access argues that it will sustain harm in the form of delay and economic harm. Attachment 8, pp. 36 & 38. That claim is not credible considering the past actions of Dakota Access, including pushing forward with pipeline construction activities prior to receiving the requisite federal approvals, knowing that it may well not receive such approvals, and knowing that there would be litigation in light of the international outrage over the pipeline. It is well settled that mere economic harm is not itself an irreparable harm, and thus cannot outweigh an irreparable injury to constitutional and statutory rights to religious freedom in this calculus. *See, e.g.*, *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985). Any economic harm potentially suffered by Dakota Access is outweighed by the irreparable violation of fundamental rights now threatening the Tribal religious adherents as a matter of law.

## V. THE PUBLIC INTEREST FAVORS AN INJUNCTION

The public interest lies in favor of an injunction because the public has a paramount interest in protecting religious exercise, as provided for in the First Amendment and expanded upon in RFRA. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013). Although the public interest may seem to support multiple arguments at the same time, the Court must consider how its action best serves the public interest. *Va. Petroleum Jobbers Ass'n*, 259 F.2d at 925 . "[T]here is undoubtedly . . . a public interest in ensuring that the rights secured under . . . RFRA are protected." *Tyndale House Publishers, Inc. v. Sebelius*, 904 F. Supp. 2d 106, 130 (D. D.C. 2012).

Additionally, the Tribes' overwhelming support from people and organizations across the United States and around the globe in recognition of the important principles that are at stake in this lawsuit.[9] The people understand that the

---

[9] As set forth in the Tribe's Certificate of Interested Parties, sixteen organizations and thirty-four Indian tribes have been permitted to enter as amici in support of the Tribes in the litigation below. Not one amici has entered on behalf of the Corps or Dakota Access. *See also, Stop the Bakken Pipeline*, Sierra Club, Iowa Chapter (2017), http://www.sierraclub.org/iowa/stop-bakken-pipeline (last visited Feb. 8, 2017) (Iowa farmers oppose pipeline); Jack Healy, *North Dakota Oil Pipeline Battle: Who's Fighting and Why*, New York Times (Aug. 26, 2016), *available at* https://www.nytimes.com/2016/11/02/us/north-dakota-oil-pipeline-battle-whos-fighting-and-why.html?r=1; Brian Roewe, *Faith groups express Dakota Access Pipeline opposition to Obama*, National Catholic Reporter (Nov. 18, 2016), https://www.ncronline.org/blogs/eco-catholic/faith-groups-express-dakota-access-

public interest favors in an injunction pending the Tribe's appeal in this matter because they understand the Tribe's fundamental rights and sacred landmarks are at stake.

## CONCLUSION

For the foregoing reasons, the Tribe respectfully requests this Court grant its motion for an injunction pending appeal.

---

pipeline-opposition-obama (religious leaders oppose pipeline); Kiah Collier, *Opposition to Dakota Access pipeline boils over in Austin*, The Texas Tribune (Nov. 15, 2016), *available at* https://www.texastribune.org/2016/11/15/opposition-dakota-access-pipeline-boils-over/ (Texans march against pipeline); Derrick Broze, *19 Members of Congress Call On Obama to Halt Dakota Access Pipeline*, MintPress News (Oct. 5, 2016), http://www.mintpressnews.com/19-members-of-congress-call-of-obama-to-halt-dakota-access-pipeline/221152/ (19 members of Congress oppose pipeline).

Respectfully submitted this 15th day of March, 2017.

CHEYENNE RIVER SIOUX TRIBE,
Intervenor-Plaintiff,

By: /s/ Nicole E. Ducheneaux

Nicole E. Ducheneaux
Fredericks Peebles & Morgan LLP
3610 North 163rd Plaza
Omaha, NE 68116
Telephone: (402) 333-4053
Facsimile: (402) 333-4761
nducheneaux@ndnlaw.com
jmessineo@ndnlaw.com

Conly J. Schulte
Fredericks Peebles & Morgan LLP
1900 Plaza Drive
Louisville, CO 80027
Telephone: (303) 673-9600
Facsimile: (303) 673-9839
cschulte@ndnlaw.com

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it has been prepared in a proportionally spaced typeface using in Times New Roman typeface with 14 point font and contains 5,155 words (excluding cover, tables, and certificate of service and compliance), according to the count of the computer program Microsoft Word used to prepare the brief.

/s/ Nicole E. Ducheneaux
Nicole E. Ducheneaux

## CERTIFICATE OF SERVICE

I certify that on March 15, 2017, I filed the foregoing *Emergency Motion for Injunction Pending Appeal* with the Court and delivered the original and four copies to the Court, and served true and correct copies via e-mail (defendant and intervenor-defendant have agreed to accept electronic service of the Motion), and, as a courtesy, sent copies via Federal Express to the following:

**Counsel for Defendant-Appellee U.S. Army Corps of Engineers**

James A. Maysonett
Appellate Section, Environment and Natural Resources Section
U.S. Department of Justice
PHB Mailroom 2121
601 D Street, NW
Washington, DC 20004
james.maysonett@usdoj.gov

Erica M. Zilioli
U.S. Department of Justice
Environmental Defense Section
601 D Street, NW, Suite 8000
Washington, DC 20004
erica.zilioli@usdoj.gov

**Counsel for Plaintiff Standing Rock Sioux Tribe**

Jan Hasselman
Earthjustice Legal Defense Fund
705 Second Avenue
Suite 203
Seattle, WA 98104-1711
jhasselman@earthjustice.org

**Counsel for Intervenor-Defendant-Appellee Dakota Access, LLC**

Kimberly H. Caine
Robert D. Comer
Norton Rose Fullbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001-4501
kim.caine@nortonrosefullbright.com
william.leone@nortonrosefullbright.com
bob.comer@nortonrosefullbright.com

William J. Leone
Norton Rose Fulbright US LLP
666 Fifth Avenue
New York, New York 10103-3198
william.leone@nortonrosefulbright.com

Edward V.A. Kussy
Alan M. Glen
Nossaman LLP
1666 K Street, NW, Suite 500
Washington, DC 20006
ekussy@nossaman.com
aglen@nossaman.com

Miguel A. Estrada
William S. Scherman
David Debold
Gibson Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington D.C.
mestrada@gibsondunn.com

/s/ Nicole E. Ducheneaux